UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

TERRANCE MALONE,

      Plaintiff,

  - against -

CITY OF NEW YORK,

      Defendant.

--------------------------------------X

MEMORANDUM AND ORDER

Civil Action No.
CV-05-2882 (DGT)

Trager, J.:

    Pro se plaintiff Terrance Malone ("plaintiff" or "Malone")
filed this employment discrimination suit against the City of New
York ("defendant" or "the City") for retaliation under Title VII
of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq.
Plaintiff, a corrections officer with the New York City
Department of Corrections ("DOC"), alleges that after he
complained about a supervisor's improper and threatening
behavior, the supervisor retaliated against plaintiff by falsely
accusing plaintiff of pushing him, which resulted in plaintiff
being suspended.  Defendant has moved for summary judgment
pursuant to Federal Rule of Civil Procedure 56.  Plaintiff did
not submit an opposition to defendant's motion for summary
judgment.

    For the reasons explained below, defendant's motion is
granted.

## Background

### (1)

### Plaintiff's Employment with DOC

Plaintiff was, at all times relevant to this action, a corrections officer employed by DOC. Deposition of Terrance Malone ("Malone Dep.") at 14, 25. Plaintiff began his employment with DOC on June 1, 2000 and was assigned to the Anna Marie Kross Center ("AMKC"), a correctional facility operated by DOC. Id. at 14, 24-25. As a corrections officer, plaintiff was responsible for the care, custody and control of DOC inmates, and for maintaining the safety and order of the correctional facility. Id. at 23-24. Corrections officers are expected to adhere to a strict chain of command, which is essential to the safety and operation of the correctional facility. Id. at 83. As part of this paramilitary chain of command, it is common for supervisors, in carrying out their managerial duties, to occasionally yell at corrections officers. Id. at 83-84.

### (2)

### February 4, 2005 Incident

On February 4, 2005, plaintiff was assigned to a response team dispatched as a result of an alarm that had sounded within the AMKC facility. Id. at 37-38. A response team is a group of officers charged with lending assistance to another officer that

2

is experiencing a conflict in his or her assigned area.  <u>Id.</u> at 38.  Before being dispatched to such an area, members of the response team are typically issued specialized equipment including a helmet, vest and baton.  <u>Id.</u> at 38.

Following resolution of the alarm for which plaintiff's response team had been dispatched, plaintiff failed to return to the staging area with the rest of the response team.  <u>Id.</u> Plaintiff, who was not feeling well, handed his equipment to a fellow officer on the response team and returned to his customary post.  <u>Id.</u> at 38-39.  Captain Gerald Davis ("Captain Davis"), the supervisor of the response team, apparently noticed plaintiff missing from the formation as the response team was returning to the staging area.[1]  <u>Id.</u> at 39-40.  Captain Davis then telephoned plaintiff at plaintiff's regularly-assigned post.  <u>Id.</u>  According to plaintiff, Captain Davis sounded upset with plaintiff and demanded an explanation from plaintiff for why he failed to return to the staging area with the response team.  <u>Id.</u> at 39-40, 42.  Plaintiff explained to Captain Davis that he had been unable to return with the response team because he had been feeling ill.  <u>Id.</u> at 40.  Captain Davis instructed plaintiff to "never do it again," to which plaintiff responded "not a problem."  <u>Id.</u> at 42.

---

[1]  Captain Davis was the supervisor of the response team, but was not plaintiff's direct supervisor.  Malone Dep. at 44. Captain Beverly Ford ("Captain Ford") was plaintiff's direct supervisor at his regular post.  <u>Id.</u> at 47.

After the first call, Captain Davis telephoned plaintiff two
more times in rapid succession. Id. at 42-43. In Captain Davis'
second telephone call, he ordered plaintiff to prepare a report
of the incident. Id. at 42. Plaintiff agreed to give Captain
Davis a report, stating: "If that's what you want, I'd give it to
you. You're giving me a lawful order." Id. at 42-43. They
both then hung up. Id. Captain Davis then called a third time
and warned plaintiff, in profane language, to take him seriously
and not to mess around. Id. at 43. Plaintiff, still feeling ill
and sensing the escalating tension, hung up on Captain Davis.[2]
Id. at 42-43.

Following the last call, Captain Davis, accompanied by
Captain Juan Calle ("Captain Calle"), arrived at plaintiff's post
and began angrily pounding on the door. Id. at 43. Upon hearing
Captain Davis' pounding, plaintiff telephoned Captain Davis'
supervisor, Assistant Deputy Warden Vann ("ADW Vann"). Id. at
36, 43. Plaintiff called ADW Vann to alert him that a conflict
was transpiring between plaintiff and Captain Davis, that
Captains Davis and Calle were outside plaintiff's door knocking

---

[2] The parties dispute how many times plaintiff hung up on
Captain Davis. Plaintiff asserts that he only hung up on Captain
Davis once, in termination of the third call. Malone Dep. at 39-
43. However, in bringing disciplinary charges against plaintiff,
which are discussed infra, DOC alleged that plaintiff hung up on
Captain Davis twice. See DOC Charges and Specifications against
Plaintiff ("Chgs. & Specs.") 1; see also Malone Dep. at 42
(stating that Captain Davis alleged that plaintiff hung up on him
during the second call).

loudly and that plaintiff was intimidated by the situation. Id.
at 43-44. Plaintiff informed ADW Vann about the phone calls he
had received from Captain Davis regarding the response team
incident. Id. at 44, 46. Plaintiff also told ADW Vann that
plaintiff was "questioning Captain Davis' intentions because he
[was] not [plaintiff's] area supervisor and he was accompanied by
another Captain." Id. at 46.

Ultimately, ADW Vann instructed plaintiff to open the door
and put Captain Davis on the phone. Id. at 44, 47. Plaintiff
followed ADW Vann's orders, unlocked the door and gave the phone
to Captain Davis. Id. at 44. Plaintiff's entire conversation
with ADW Vann lasted a minute-and-a-half. Id. at 48.

At his deposition, plaintiff explained that, in stating he
was "questioning Captain Davis' intentions," plaintiff meant that
he was concerned that Captain Davis had come to plaintiff's post
to start "foul play." Id. at 46-47. Plaintiff further explained
at his deposition that he expressed concern about Captain Davis'
"intentions" because plaintiff believed that Captain Davis, who
"[was] not [plaintiff's] area supervisor," was violating DOC
protocol by confronting plaintiff at plaintiff's post. Id. at
47-48. According to plaintiff, under proper protocol, Captain
Davis should not have left his assigned post to handle the
situation with plaintiff in person and instead should have
communicated with plaintiff's area supervisor, Captain Ford,

5

regarding any orders or reprimands directed at plaintiff.  Id.

Notably, at his deposition, plaintiff conceded that he never told ADW Vann that he was "concerned about [Captain Davis'] intentions with respect to any sort of racial bias against [plaintiff]." Id. at 48.  Plaintiff also admitted that, during the conversation, he never said that he believed Captain Davis was a racist.  Id.

After plaintiff gave the phone to Captain Davis, Captain Davis briefly spoke to ADW Vann and then proceeded to reprimand plaintiff in a hostile tone for his behavior.  Id. at 44-45, 48. Specifically, Captain Davis continued to demand that plaintiff explain why he had relinquished his response team equipment and had failed to return with the rest of the team.  Id. Additionally, Captain Davis claimed that plaintiff was out of uniform because his collar insignia was not correct and he was missing his knife and flashlight.  Id. at 45-46.  Plaintiff responded to each of Captain Davis' questions about his uniform, apparently showing Captain Davis that he did, in fact, have the correct uniform.  Id.  Nevertheless, Captain Davis demanded a report for plaintiff's uniform.  Id. at 46.

During plaintiff's interaction with Captain Davis, plaintiff's blood pressure rose substantially and he began to feel faint.  Id. at 49-51.  Plaintiff began to feel excruciating pain in his chest and "released" the facility keys that he was

carrying.[3]  Id. at 82.  He was then brought to the on-site clinic
and was later transported to the hospital.  Id. at 50-51, 88.
Plaintiff was ultimately diagnosed with having had a panic attack
and was referred to a cardiologist.  Id. at 51-52.

According to plaintiff, that same day, Captain Davis filed a
written report of the incident, which apparently stated, inter
alia, that plaintiff "hit" or "pushed" him.  Id. at 35-36, 48-49.
Plaintiff maintains that he never hit or pushed Captain Davis.
Id. at 49, 80-81.

Plaintiff subsequently filed a "grievance" through Warden
Brian Riordan regarding Captain Davis': (1) "harassment";
(2) "unlawful" action of coming down to plaintiff's post;
(3) "unlawful" requests that plaintiff submit reports for missing
uniform equipment; and (4) neglect of plaintiff while he was in
medical distress.  Id. at 60.  Plaintiff's deposition testimony
only briefly addresses the substance of his grievance.

Notably, the grievance filed by plaintiff and Captain Davis'
report are not part of the record.

_____

[3]  As explained infra, in seeking to discipline plaintiff,
DOC alleged that plaintiff threw the keys.  See Chgs. & Specs. 2.

7

**(3)**

**Plaintiff's EEOC Charge**

Plaintiff complained about the February 4, 2005 incident by filing a charge with the United States Equal Employment Opportunity Commission ("EEOC"). The record does not indicate the substance of the charge or the date it was submitted to the EEOC. Id. at 58. On May 31, 2005, the EEOC sent plaintiff a right-to-sue letter, concluding that the facts alleged in plaintiff's charge failed to state a claim under any of the statutes enforced by the EEOC. See EEOC Dismissal and Notice of Rights.

**(4)**

**Disciplinary Charges and Proceedings**

On or around June 14, 2005, plaintiff met with Deputy Warden Joandrea Davis ("DW Davis") to discuss his behavior during the February 4 incident. Malone Dep. at 65. DW Davis informed plaintiff that his violations of DOC rules and regulations warranted formal discipline. Id. DW Davis offered plaintiff the opportunity to forfeit four vacation days in lieu of a formal disciplinary hearing. Id. Plaintiff declined DW Davis' offer. Id.

DOC then preferred disciplinary charges against plaintiff,

alleging that plaintiff violated DOC rules by: (1) leaving his post and giving his equipment to another officer without permission during a response call; (2) being disrespectful to a supervisor by twice hanging up the telephone on Captain Davis; (3) abandoning his post and failing to safeguard DOC property when he threw his keys; (4) physically attacking Captain Davis; (5) being out of uniform; and (6) submitting a false and misleading report of the incident. See Chgs. & Specs. 1-4. The allegation of a false report is presumably in reference to the "grievance" plaintiff filed.

In June 2006, a hearing was conducted before Administrative Law Judge Donna Merris ("ALJ Merris") of the New York City Office of Administrative Trials and Hearings ("OATH") to adjudicate plaintiff's disciplinary charges. ALJ Merris ultimately issued a report and recommendation ("OATH R&R") sustaining five of the six charges against plaintiff and recommending a 60-day suspension without pay, which plaintiff served in 2008.[4] OATH R&R at 21-22;

---

[4] ALJ Merris did not sustain the third allegation, namely, that plaintiff abandoned his post and failed to safeguard DOC property when he threw his keys. OATH R&R at 19. ALJ Merris reasoned that, evaluating the charged behavior in its complete context, there was no evidence that plaintiff intentionally abandoned his post or intentionally failed to safeguard DOC equipment. Id. at 19-20. Rather, ALJ Merris found that plaintiff left his post because he was in need of medical attention and threw the keys out of frustration. Id. at 19. Moreover, because other officers were on the scene to provide coverage of plaintiff's post and to recover the keys instantaneously, ALJ Merris found that the security of the

Malone Dep. at 69.

During the OATH hearing, Captains Davis, Calle and Ford testified on behalf of DOC. OATH R&R at 17. Plaintiff declined to testify on his own behalf and did not present any witnesses. Id. at 1, 14. Plaintiff's representative did not cross-examine DOC's witnesses on the substance of their testimony. Id. at 17. The "grievance" plaintiff filed, which outlined his version of events, was introduced at the hearing by DOC.[5] Id. at 14.

In sustaining the charges against plaintiff, ALJ Merris found the testimony of Captains Davis, Calle and Ford to be credible. Id. at 16-17, 22. Specifically, ALJ Merris concluded that there was sufficient evidence to find that plaintiff had

---

facility was never compromised. Id.

[5] As noted earlier, the grievance filed by plaintiff is not part of the record. The OATH R&R, however, discusses the substance of plaintiff's grievance and provides more information about the grievance than plaintiff's deposition testimony. Notably, the grievance apparently also alleged that: (1) in the time between Captain Davis' last phone call and plaintiff's phone call to ADW Vann, plaintiff reported Captain Davis' "disturbing" phone calls to Captain Ford, who ignored plaintiff's complaint; (2) during plaintiff's phone call to ADW Vann, plaintiff informed ADW Vann that Captain Davis' phone calls were disturbing and that Captain Davis had used profane language and had spoken in a threatening manner; and (3) during plaintiff's confrontation with Captain Davis, Captain Davis told plaintiff that plaintiff's excuse for his actions (i.e., that plaintiff was not feeling well) was "bulls--t" and that Captain Davis would "expect this from a female officer - not you." OATH R&R at 15. Although the OATH R&R is not admissible evidence regarding the substance of plaintiff's grievance, as explained infra, even if the summary of the grievance provided in the OATH R&R were considered, none of those facts would alter the outcome of the case.

10

abandoned his post during the response team's mobilization, had

hung up on Captain Davis twice, had physically attacked Captain

Davis during their confrontation, had been out of uniform and had

filed a false report about the incident. Id. at 22. In reaching

her decision, ALJ Merris considered plaintiff's decision not to

testify or cross examine the substance of the witness' testimony.

Id. at 17.

Plaintiff admits that he did commit at least two of the

infractions listed in the disciplinary charges. Specifically,

plaintiff admits that he gave his equipment to another officer

and failed to return with the rest of the response team. Malone

Dep. at 38-41, 81-82. However, plaintiff explained in his

deposition that, at the time, it was his understanding that there

was "no standard rule" that he had to return the equipment

himself. Id. at 40. Rather, plaintiff believed that the

equipment could be returned by any DOC officer. Id. Plaintiff

also admits to having hung up on Captain Davis, but maintains

that he only did so once, rather than twice, as the disciplinary

charge describes. Id. at 43, 81-82.

Plaintiff denies that he assaulted Captain Davis and that he

was out of uniform. Id. at 45-46, 49, 80-81. As such, plaintiff

also appears to implicitly dispute that the grievance he filed

describing the events of February 4, 2005 was false or

misleading.

**Procedural History**

After plaintiff filed the instant suit against the City and numerous other defendants, defendants filed a motion to dismiss. <u>Malone v. City of New York</u>, No. 05-cv-2882, 2006 WL 2524197 (E.D.N.Y. Aug. 30, 2006) ("<u>Malone I</u>"). Plaintiff's pro se complaint was construed to assert claims under: (1) Title VII of the Civil Rights Act of 1964 based on retaliation, hostile work environment and disparate treatment on the basis of race and gender; (2) 42 U.S.C. § 1983 based on violations of due process and the First Amendment; and (3) various statutes that were irrelevant to the facts outlined in the complaint. <u>Id.</u> All of the claims against the non-City defendants and all but one claim against the City were dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. <u>Id.</u> Plaintiff was granted leave to file an amended complaint for a number of his claims, <u>id.</u>, but failed to do so. The only claim that was not dismissed was plaintiff's Title VII retaliation claim against the City.[6]

---

[6] Although <u>Malone I</u> analyzed and ultimately dismissed plaintiff's "race" discrimination claims, <u>Malone I</u> did not

Relying on statements made by plaintiff in his opposition to the motion to dismiss, Malone I construed plaintiff's papers to allege that DOC subjected plaintiff to disciplinary proceedings based on false charges in retaliation for plaintiff filing a grievance regarding his supervisors' behavior and an EEOC complaint. Id. at *7. Malone I did not consider plaintiff to have alleged that he was retaliated against for his telephone call to ADW Vann. Although plaintiff's complaint briefly mentions plaintiff's conversation with ADW Vann, Compl. ¶¶ 7-8, that conversation was not discussed in Malone I.

## Discussion

Retaliation claims asserted under Title VII are governed by the three-step burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) (applying McDonnell Douglas to Title VII retaliation claim). Under this framework, the plaintiff has the initial burden of establishing a prima facie case of retaliation. Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). If the plaintiff makes out a prima facie case, a

_____

identify plaintiff's race or ethnicity and there is no evidence in the record on this point.

13

presumption of retaliation arises and the burden shifts to the
defendant to articulate a legitimate, non-retaliatory reason for
the adverse employment action of which the plaintiff complains.
Id. "Finally, as for the third step, once an employer offers
such proof, the presumption of retaliation dissipates and the
employee must show that retaliation was a substantial reason for
the adverse employment action." Id.

To establish a prima facie case of retaliation, plaintiff
must demonstrate: "(1) participation in a protected activity;
(2) that the defendant knew of the protected activity; (3) an
adverse employment action; and (4) a causal connection between
the protected activity and the adverse employment action." Id.
(quoting McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d
Cir. 2001)). Plaintiff engaged in four potentially protected
activities: his EEOC complaint, his complaint to ADW Vann, his
internal grievance and his complaint to Captain Ford. The
potential retaliation claims related to each are analyzed below.


**a. EEOC Charge**

Plaintiff explicitly conceded at his deposition that he is
not claiming that he was retaliated against for filing his EEOC
charge. Malone Dep. 77.

**b. Complaint to ADW Vann**

At his deposition, plaintiff contended that, in retaliation
for his complaint to ADW Vann, Captain Davis falsely alleged that
plaintiff pushed him.[7] Malone Dep. 35-37, 46-49, 78. However,
plaintiff's retaliation claim based on his complaints about
Captain Davis to ADW Vann on February 4 does not meet the second
element necessary to establish a prima facie case. With regard
to that element, the Second Circuit has explained that "implicit
in the requirement that the employer have been aware of the
protected activity is the requirement that it understood, or
could reasonably have understood, that the plaintiff's opposition
was directed at conduct prohibited by Title VII."
Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276,
292 (2d Cir. 1998).

Nothing in plaintiff's complaints to ADW Vann explicitly

_____

[7] In addition to asserting that Captain Davis falsely
alleged that plaintiff pushed him in retaliation for plaintiff's
call to ADW Vann, plaintiff also offered, at his deposition, two
alternative theories to explain Captain Davis' false allegation.
Plaintiff believed that Captain Davis falsely reported that
plaintiff assaulted him in order to "cover-up" the fact that,
during the dispute, Captain Davis was away from his post in
violation of proper protocol. Malone Dep. at 49-50. Plaintiff
also believed that when he was sent to the hospital, Captain
Davis and Captain Calle realized that plaintiff was not faking
his ailments and fabricated the alleged assault so they could
"combat whatever [came] down from this incident." Id. at 88-89.

referred to any discrimination based on plaintiff's race, gender
or any other category protected by Title VII.  In fact, at his
deposition, plaintiff conceded that he never told ADW Vann that
he was "concerned about [Captain Davis'] intentions with respect
to any sort of racial bias against [him]."  Malone Dep. 48.
Plaintiff also admitted that, during the conversation, he never
said that he believed Captain Davis was a racist.  Id.  Moreover,
nothing plaintiff said to ADW Vann could reasonably be understood
as an implicit complaint about conduct prohibited by Title VII.
Plaintiff never suggested that he was being treated differently
than other employees.  At most, plaintiff complained that Captain
Davis' conduct was improper and that plaintiff was intimidated by
Captain Davis' actions.  However, nothing in plaintiff's
statements to ADW Vann could have reasonably been understood to
imply that Captain Davis' harsh treatment of plaintiff was
because of his race, his gender or any other category protected
by Title VII.[8]

---

[8]  There is no evidence that Malone ever specifically
complained, during the call to ADW Vann, that Captain Davis was
"harassing" him.  However, even where plaintiffs specifically
complain of "harassment," courts still grant summary judgment if
there is no evidence suggesting that the plaintiffs were
complaining that they were harassed because of a ground protected
by Title VII.  See Williams v. Home Depot, 02-cv-5353, 2005 WL
24294921, at *15 (S.D.N.Y. Sept. 30, 2005) (granting summary
judgment and holding that pro se plaintiff's complaint that his
supervisor harassed, defamed and unjustly reprimanded him did not
constitute protected activity where complaint did not "state or

16

Although plaintiff appears to have intended to inform ADW Vann that plaintiff believed that Captain Davis' actions violated DOC protocol, id. at 48, there is no evidence that this intention was ever clearly expressed by plaintiff during the conversation. In any event, even if plaintiff had, either explicitly or implicitly, informed ADW Vann of such a concern, that still could not have reasonably been understood to be a complaint about conduct prohibited by Title VII.  See Galdieri-Ambrosini, 136 F.3d at 292 (holding that plaintiff failed to meet second element of prima facie case where, inter alia, plaintiff questioned whether it was a violation of company policy for a supervisor to ask plaintiff to perform personal tasks for him).

c.  **Plaintiff's Internal Grievance**

Plaintiff was never specifically asked at his deposition

---

imply that [plaintiff] thought he was being treated unfairly because of his race"), aff'd, 196 Fed. App'x. 47 (2d Cir. 2006); West v. Mt. Sinai Medical Ctr., 00-cv-6191, 2002 WL 530984, at *3-4 (S.D.N.Y. Apr. 9, 2002) (granting summary judgment in case alleging same-sex harassment and holding employer could not have reasonably understood that plaintiff's complaints about supervisor's "harassment" "implicated Title VII").  But see Roman v. Cornell Univ., 53 F. Supp. 2d 223, 245 (N.D.N.Y. 1999) (stating that "[h]arassment can be many things and the use of that term does not automatically implicate Title VII, but, nonetheless, denying summary judgment and holding that complaint to HR director about "harassment," which did not explicitly refer to sex or race as the basis for the harassment, was still sufficient to meet plaintiff's de minimus burden to show that she engaged in protected activity).

whether he believed that he was retaliated against for filing his internal grievance. However, when asked generally about his retaliation claims, plaintiff never mentioned his internal grievance and appeared to concede that he only believed that he was retaliated against for the call to ADW Vann.[9] Malone Dep. at 35-37, 78. Thus, as defendant correctly assumes, plaintiff has waived any retaliation claim stemming from the internal grievance.

Moreover, even if plaintiff did raise such a claim it would fail because plaintiff has not established a causal connection

---

[9] At plaintiff's deposition, the following exchanges occurred:

> Q: Is it your claim that because you called Captain Davis' supervisor, he retaliated against you by making a false statement?
> A: Yes.
> Q: Are you claiming that you were retaliated against in any other way?
> A: No.
>
> ****
>
> Q: So other than what we've discussed already, is there any other way you believe that the Defendants, the City of New York and the Department of Correction retaliated against you, including Captain Davis?
> A: No, not other than that.

Malone Dep. 37, 78.

between the internal grievance and Captain Davis' allegation that plaintiff pushed him. At his deposition, plaintiff clearly conceded that he believed that the only retaliatory action taken "against" him was Captain Davis' false allegation of assault. Id. at 37, 78. Because Captain Davis first made the allegedly false allegation in a report on February 4, which was before plaintiff filed his grievance, Captain Davis' allegation could not have been in retaliation for the grievance.

According to the OATH R&R, plaintiff filed his internal grievance on February 6, which is two days after Captain Davis first alleged that plaintiff assaulted him. Other than the OATH R&R, there is no evidence in the record identifying the specific date of plaintiff's grievance. However, even excluding the specific date of the grievance as referenced in the OATH R&R, plaintiff's claim would still fail because there is no evidence suggesting that plaintiff filed his internal grievance before Captain Davis filed the report that included the false allegation. In fact, according to plaintiff's deposition, after the confrontation with Captain Davis, plaintiff was brought to the on-site clinic and was later transported to the hospital. Id. at 50-51, 88. As such, no reasonable juror could conclude that plaintiff filed his grievance before Captain Davis filed the report that contained the allegedly false allegation.

Given the above, it is unnecessary to determine whether the evidence of plaintiff's grievance (either from his deposition or from the OATH R&R) would have been sufficient to show that the grievance could have reasonably been understood to be a complaint about conduct prohibited by Title VII.

**d.  Complaint to Captain Ford**

Plaintiff has never alleged that he was retaliated against for his complaint to Captain Ford.  Moreover, without more, a complaint about "disturbing" phone calls, OATH R&R at 15, could not reasonably have been understood to be a complaint about conduct prohibited by Title VII.

## Conclusion

Defendant's motion for summary judgment is granted.  The Clerk of the Court is directed to close the case.

Dated:  Brooklyn, New York
        September 16, 2010

SO ORDERED:

_____/s/_____
David G. Trager
United States District Judge

<u>Copy Mailed To:</u>

Terrance Malone
152 McKinney Street
Central Islip, NY 11722